**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KAREN JACKSON and GABRIY'EL FRASER, | ) | 3:22-GP-00001 (SVN) |
| *Complainants*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN WILLIAMS, | ) | January 4, 2024 |
| *Respondent*. | ) | |

| | | |
|---|---|---|
| KAREN JACKSON and GABRIY'EL FRASER, | ) | 3:22-GP-00002 (SVN) |
| *Complainants*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KATRENA ENGSTROM, | ) | January 4, 2024 |
| *Respondent*. | ) | |

## MEMORANDUM OF DECISION AND PUBLIC CENSURE

Sarala V. Nagala, United States District Judge.

In this grievance proceeding, the Federal Grievance Committee (the "Committee") has presented Attorneys John Williams and Katrena Engstrom ("Respondents") to the Court for possible professional discipline, requesting a public censure for Attorney Williams and a private censure for Attorney Engstrom for alleged violations of Connecticut Rules of Professional Conduct (the "Rules") 1.1 and 1.4. For the reasons explained below, the recommendation of the Committee is adopted in part, insofar as the Court finds that Respondents have violated Rules 1.3 and 1.4, and that public censure is the appropriate sanction for both.

## I.       FACTUAL & PROCEDURAL BACKGROUND

### A.  Underlying § 1983 Action

This proceeding concerns Respondents' representation of the Complainants in a lawsuit pursuant to 42 U.S.C. § 1983, *G.F. v. Castillo-Jimenez, et al.*, 3:19-cv-1419 (KAD) (D. Conn.).[1] Specifically, on June 27, 2018, while Complainant Gabriy'el Fraser was a minor, he had an incident with the Bridgeport Police Department.  Williams Presentment at 2.  He was at a basketball court with several other individuals when several officers from the Bridgeport Police Department arrived at the park.  *Id.*  Upon their arrival, Mr. Fraser fled the scene, and the officers followed.  *Id.*  After a brief chase, Mr. Fraser stopped running and indicated he would comply with the officers' instructions.  *Id.*  Despite this willingness to comply, the officers deployed an electronic weapon, discharging electricity into Mr. Fraser's body, causing him injury.  *Id.*  Mr. Fraser was arrested, but the charges were later dropped.  *Id.*

After this incident, Complainant Karen Jackson, Mr. Fraser's mother, contacted Attorney Williams about possibly representing her son in a lawsuit related to this incident.  *Id.*  On September 21, 2018, Ms. Jackson met with, and engaged, Attorney Williams and his firm.  *Id.*  Specifically, Attorney Williams and his firm were hired to represent the Complainants "in connection with police brutality litigation based upon the events of June 27, 2018."  *Id.*  During her discussion with Attorney Williams, Ms. Jackson provided him with certain documents, including a police report related to the incident, that she had obtained on her own.[2]  Williams

---

[1] The underlying facts giving rise to this proceeding are essentially undisputed by the parties.  For convenience, the Court will cite to the Presentment filed by the Grievance Committee, Notice of Presentment, ECF No. 16 ("Williams Presentment"), unless otherwise noted.

[2] At the time, Ms. Jackson was a member of the Bridgeport City Council.  Ans. to Presentment, ECF No. 19 at 3 ("Williams Ans.").

Presentment at 2.  She further informed Attorney Williams that she was seeking relief in the form of money damages.  *Id.*

After being engaged, Attorney Williams filed a complaint in United States District Court for the District of Connecticut in September of 2019 (the "Section 1983 Complaint").  *Id.*; *see also G.F.*, 3:19-cv-1419 (KAD), ECF No. 1.  The Section 1983 Complaint was filed by Ms. Jackson on behalf of Mr. Fraser, who was still a minor at the time of filing.  Williams Presentment at 2–3. The complaint alleged one count of "unreasonable force in violation of the Fourth Amendment" against three Bridgeport officers.  *Id.* at 3.  It sought compensatory and punitive damages, as well as attorneys' fees and costs.  *Id.*

The action proceeded to discovery in November of 2019.  *See G.F.*, 3:19-cv-1419 (KAD), Scheduling Order, ECF No. 19.  Attorney Katrena Engstrom, a longtime associate attorney in Attorney Williams' firm, became the Complainants' primary contact on the matter.  *Jackson v. Engstrom*, No. 22-gp-2 (SVN), Not. of Presentment, ECF No. 14 at 3 ("Engstrom Presentment"). During the discovery period, which lasted until February 1, 2021, counsel for the defendant police officers served written discovery upon Complainants, and took the depositions of both Complainants.  Williams Presentment at 3.  Attorney Engstrom attended and prepared the Complainants for their depositions, *Jackson v. Engstrom*, No. 22-gp-2 (SVN), Response to Show Cause Order, ECF No. 18 at 9–12 ("Engstrom Response"), but neither Attorney Engstrom nor Attorney Williams served any written discovery on defendants or noticed any depositions. Williams Presentment at 3; Engstrom Presentment at 3.  Attorney Engstrom drafted written discovery requests to serve on one defendant, but it appears they were never propounded.  *Id.* at 6. After discovery closed, the parties participated in a settlement conference held via Zoom on March 12, 2021, with U.S. Magistrate Judge Robert M. Spector.  Williams Presentment at 3.  In

preparation for this settlement conference, Ms. Jackson first learned that neither Attorney Williams nor Attorney Engstrom had attempted to collect any discovery from defendants. *Id.* at 4.

Despite Ms. Jackson's unease at the lack of discovery that had been conducted, during this settlement conference, the parties reached an agreement to resolve the action. *Id.* at 3. Attorney Engstrom and both Complainants were present for the conference. *Id.* at 4. Soon thereafter, Ms. Jackson changed her mind and decided she did not want to agree to the settlement. *Id.* Ms. Jackson stated that she had only agreed to the settlement in the first place because she believed she had no other choice. *Id.* Between April 9, 2021, and June 10, 2021, Judge Spector held follow-up telephonic conferences concerning settlement negotiations, but no agreement was reached. *Id.* On June 14, 2021, Attorneys Williams and Engstrom filed an amended complaint on behalf of Mr. Fraser, who had at that point reached the age of majority. *Id.* On September 1, 2021, without informing Ms. Jackson, Mr. Fraser signed the settlement agreement entitling him to receive a certain sum, bringing the underlying litigation to an end. *Id.*

### B. State Grievance Proceeding

On the same day as the first settlement conference with Judge Spector, *see G.F*, 3:19-cv-1419 (KAD), Minute Entry, ECF No. 35, Ms. Jackson filed a state grievance complaint against Attorney Williams (but not Attorney Engstrom) with the Connecticut Statewide Grievance Committee. *Jackson v. Williams*, 22-gp-1 (SVN), Not. of Filing of Grievance Compl. and Grievance Panel Dismissal, ECF No. 24-1 at 2–4. In this three-page complaint, she alleged Attorney Williams violated Rule 1.3 by "omitt[ing] that he was only going to file one count of excessive force" and not serving any interrogatories, among other things, and that his professional discretion was being exercised "without [her] knowledge or approval after the fact." *Id.* at 4.

On September 3, 3021, this complaint was dismissed by the Grievance Panel for Bethany, New Haven, and Woodbridge ("Grievance Panel"). ECF No. 24-2 at 2. The Panel determined there was "no evidence of any violation of the Rules of Professional Conduct." *Id.* at 3. This determination was made "upon the written record and without the need for a hearing." *Id.* at 2.

C. Federal Grievance Proceeding

Complainants brought the instant actions against Respondents on January 10, 2022. Williams Presentment at 1. Complainants allege that Respondents never provided them a copy of the Section 1983 Complaint until the settlement conference; failed to name the appropriate defendants in the underlying action; and failed to conduct adequate discovery in the underlying action.[3] *Id.* at 4–5. Respondents claim that their decision not to name certain defendants, bring certain claims, serve written discovery, or conduct depositions was driven by their legal analysis of the claims and their significant experience in § 1983 litigation. *Id.* at 5–6.

The Committee held a hearing on September 12, 2022, with members of the Committee, Complainants, and Respondents in attendance. *Id.* at 1. In its Presentments, filed December 23, 2022, the Committee requests that the Court impose disciplinary action against both Respondents for violating two Rules of Professional Conduct. Specifically, the Committee found by clear and convincing evidence that Respondents failed to comply with Rule 1.1 requiring an attorney to competently represent their clients—due to their failure to conduct discovery whatsoever, *see* Williams Presentment at 7–8; Engstrom Presentment at 7–8—and Rule 1.4 requiring an attorney to adequately communicate with and keep a client informed of developments in the client's case—

---

[3] The complaint also contained allegations that the underlying action was improperly sealed, and that settlement funds were not properly disbursed. *Id.* at 4–5. However, the underlying action was not sealed, except that the original complaint was sealed because it contained the full name of Mr. Fraser, then a minor, and Attorney Williams was ordered to file an amended complaint. *See G.F.*, 3:19-cv-1419 (KAD), ECF Nos. 1, 6, 7, 11. As to the settlement funds, the parties now agree that all funds were properly disbursed. Thus, the Court does not address either of these allegations further. Like the Committee, the Court strongly disapproves of Complainants' conduct in falsely accusing Respondents of stealing money from a client. *See* Williams Presentment at 5 n.1.

due to their failure to communicate regarding the decision not to conduct discovery and not to include certain claims and defendants in the complaint, *see id.* at 8–9.

The Committee recommends a sanction of public censure for Attorney Williams because (1) despite that he and Attorney Engstrom eventually achieved a settlement for Complainants, the lack of information provided in itself constituted an injury or potential injury to Complainants; (2) aggravating factors are present because Attorney Williams has a prior, similar disciplinary offense, and, in the Committee's view, demonstrated a belief that his conduct was appropriate despite his significant experience. *See* Williams Presentment at 10–11. Attorney Williams, in his response to the Committee's Presentment, emphasized his significant experience litigating many civil rights cases in this district (and the comparative paucity of grievance complaints), the age of his prior disciplinary offense, and the finding of the state Grievance Panel with respect to Ms. Jackson's complaint. Williams Ans., ECF No. 19. Attorney Williams argues that, at most, the sanction imposed should be a private, not public, censure. *Id.* at 3, 4.

The Committee recommends a sanction of private censure for Attorney Engstrom because she has no prior disciplinary history and holds a "subordinate role in her firm relative to [Attorney] Williams," thus making private censure, rather than public censure, appropriate. Engstrom Presentment at 9–10. Attorney Engstrom, in her response to the Committee's Presentment, stated that she provided Complainants with copies of the complaint while preparing them for their depositions in November of 2020 and January of 2021; that Ms. Jackson did not request any discovery until the discovery deadline had passed; and that she believed the case was not complicated, turned on credibility, and ultimately resulted in a favorable settlement for Mr. Fraser. Engstrom Response at 1–2, 6.

After a hearing at which both counsel for the Committee and Respondents were present, the Court took this matter under advisement.

## II.   **LEGAL STANDARD**

Local Rule of Civil Procedure 83.2(d)5 provides that "[d]iscipline shall not be imposed unless the Court finds, by clear and convincing evidence, that the attorney complained against should be disciplined."

## III.   **ATTORNEY WILLIAMS**[4]

The Court first examines the conduct of Attorney Williams, including what impact, if any, the state grievance proceeding has on the instant action.  The Court concludes that public censure of Attorney Williams is appropriate.

### A.   Impact of the State Grievance Proceeding

As a threshold matter, the Court finds that the Grievance Panel's dismissal of Ms. Jackson's state complaint does not have any preclusive effect on this proceeding.  Although at least one court in this district has given preclusive effect to the factual determinations of the Superior Court when deciding whether to impose reciprocal discipline in federal court, *see Matter of the Reciprocal Discipline of Zenas Zelotes as an Att'y-at-L.*, No. 3:13-GP-18 (SRU), 2017 WL 354849, at *2 (D. Conn. Jan. 23, 2017), the Court does not find it appropriate to give the Grievance Panel's dismissal any preclusive effect here, for several reasons.

First, as the Grievance Committee points out, it is not clear that principles of claim and issue preclusion apply at all in the context of grievance proceedings, as federal courts—separate from state courts—possess "autonomous control over the conduct of their officers," including lawyers.  *See Theard v. United States*, 354 U.S. 278, 281 (1957); *Fed. Grievance Comm. v. Miller*,

---

[4] References to electronic court filings in this section pertain to documents filed in Case No. 22-gp-1 (SVN).

803 F. App'x 519, 520 (2d Cir. 2020) (noting that Connecticut district court did not lack authority to impose reciprocal discipline where appeals of state disciplinary proceeding were pending, due to the district court's "inherent authority to discipline attorneys appearing before it"); *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 894–95 (2d Cir. 2019) (noting that district courts have authority to regulate attorney conduct, despite that attorneys in federal court must comply with state codes of professional responsibility) (citations omitted).  The procedures set forth in Local Rule 83.2(f)[5] emphasize this inherent authority in that a district court is specifically authorized to go against the state's disciplinary decision under certain circumstances.  *See* Local Rule 83.2(f)(2); *see also Miller*, 803 F. App'x at 522 ("Local Rule 83.2(f)(2) contains adequate due process protections, giving the District Court the ability to alter or decline reciprocal discipline as it deems appropriate.").

Second, even assuming *arguendo* that claim and issue preclusion rules do apply, the Court finds that preclusion is not justified here.  Under Connecticut law, "for res judicata to apply, four elements must be met:  (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue."  *Wheeler v. Beachcroft, LLC*, 320 Conn. 146, 156–57 (2016); *see also Sadler v. Lantz*, No. 3:07-CV-1316 CFD, 2010 WL 3418127, at *2 (D. Conn. Aug. 20, 2010) (noting that federal court must apply the preclusion law of the state that rendered the first judgment).

---

[5] Although the Court finds Local 83.2(f), and the decisions interpreting and applying it, instructive, it emphasizes that, here, the Court is *not* presented with a question of reciprocal discipline, as the state declined to impose any discipline; thus, Local Rule 83.2(f) does not control the outcome or govern the analysis here.

Here, the Court finds that there was not an "adequate opportunity to litigate the matter fully" before the Grievance Panel; thus, the Panel's decision does not have preclusive effect in this Court. *See Egbarin v. Hoffmann & Assocs.*, No. 3:18CV917 (DJS), 2020 WL 5097700, at *6 (D. Conn. Feb. 5, 2020) (declining to give Grievance Panel dismissal preclusive effect in subsequent civil action in part because, as there was no hearing, "there was not a full and fair opportunity to litigate").  The Grievance Panel made its decision without a hearing and on the basis of the written record alone, which, as far as the Court can discern, consisted of Ms. Jackson's three-page complaint and nine pages of email exhibits, *see* ECF No. 24-1; 24-2, in addition to a response by Attorney Williams, *see* ECF No. 2 at 2, that was not submitted in the present proceedings.  The Court notes further that, although the Grievance Panel is an arm of the state court, neither the state court itself, nor the Statewide Grievance Committee, opined on Ms. Jackson's complaint, which distinguishes this matter from *Zelotes* and other reciprocal discipline cases that gave significant weight to the state court's decision.  *Zelotes*, 2017 WL 354849, at *2 (giving preclusive effect to issues "decided by the Superior Court and affirmed by the Appellate Court"); *see also Miller*, 803 F. App'x at 522 (noting in affirming district court's reciprocal discipline order that Superior Court held three-day hearing at which respondent had the opportunity to present witnesses and exhibits); *Attorney Grievance Procedures in Connecticut*, available at https://www.jud.ct.gov/sgc/for_public.htm, at 6–9 (describing how state complaint proceeds from the Grievance Panel, to the Statewide Grievance Committee, and then possibly to Superior Court).

Thus, the Court does not give preclusive weight to the Grievance Panel's determination due to (1) its inherent authority to regulate the conduct of attorneys practicing in federal court; and (2) its finding that, even applying traditional principles of preclusion, preclusion is not appropriate here.  As the Court finds that one element of the test for preclusion is not met, it does not address

the other prongs of the preclusion test.  The Court will weigh the Grievance Panel's decision as one piece of the record in this case, among others.

        B.  <u>Rule 1.1</u>

The Committee found that Attorney Williams violated Rule 1.1 and 1.4.  Rule 1.1 provides that "a lawyer shall provide competent representation to a client.  Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  *Conn. Rules of Prof'l Conduct*, Rule 1.1 (2023).  The commentary to Rule 1.1 further provides that competent representation "includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners," in addition to "adequate preparation."  *Id.* at Rule 1.1, Commentary.

Contrary to the Committee's finding, the Court does not find that Attorney Williams violated Rule 1.1.  The Committee found that Attorney Williams violated Rule 1.1 by "failing to investigate the factual circumstances" of Complainants' Section 1983 case.  Williams Presentment at 8.  More specifically, the Committee points to Respondents' failure to take any discovery in the case.  Attorney Williams has justified his approach regarding discovery, offering plausible, and considered, legal and strategic analysis underlying his decisions to exclude certain claims and defendants from complaint and to not engage in discovery.  Though the Court does not necessarily indicate its approval of these decisions, it does find that the legal analysis offered, gained from Attorney Williams's experience in the area, demonstrates that Attorney Williams possessed the appropriate level of knowledge and skill to engage in this representation and discharge his duty of competence, despite any arguable deficiencies in his strategy.  *Cf. Fed. Grievance Comm. v. Spat*, No. 3:99-gp-23 (JBA), 2006 WL 1050039, at *1 (D. Conn. Apr. 20, 2006) (finding attorney did not provide competent representation where she did not review court file before appearing).

Because reasonable minds could differ on whether Attorney Williams competently litigated Complainants' case, and the Court cannot conclude there is clear and convincing evidence that his decision not to engage in discovery alone rendered his representation of Complainants below the level of competence required by Rule 1.1.

### C. Rule 1.4

Rule 1.4 provides, among other things, that "[a] lawyer shall reasonably consult with the client about the means by which the client's objectives are to be accomplished; keep the client reasonably informed about the status of the matter," and "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." *Conn. Rules of Prof'l Conduct*, Rule 1.4 (2023). The commentary accompanying the rule explains that a client must be informed of "significant developments affecting the timing or the substance of the representation" and regularly communicate in order to minimize the need for the client to request information from the attorney. *Id.* at Rule 1.4, Commentary. Information should not be withheld in the interests of the lawyer's, or anyone else's, convenience. *Id.*

The Court finds by clear and convincing evidence that Attorney Williams violated Rule 1.4 by not communicating with Complainants regarding his decision not to conduct discovery of defendants and by failing to send Complainants a copy of the complaint until, at the earliest, they were being prepared for their depositions.[6] Ms. Jackson's surprise regarding the lack of discovery conduct is evident from her numerous emails regarding the subject after the close of discovery. *See, e.g.*, ECF No. 24-1 at 10, 13; *see also* ECF No. 13 at 67:7–12 (no discussion regarding

---

[6] The Committee also found that Attorney Williams failed to communicate about the contents of the § 1983 complaint. *See* Williams Presentment at 8–9. However, there has been significant conflicting testimony on whether Attorney Williams communicated his analyses in drafting the complaint to Ms. Jackson in their initial meeting, *compare* ECF No. 6 at 2; ECF No. 13 at 59–60 (Attorney Williams discussing first meeting) *to id.* at 28 (Ms. Jackson's account of first meeting); thus, the Court does not find that this specific communication failure has been demonstrated by clear and convincing evidence.

discovery at initial meeting with Attorney Williams, and no discussion with Ms. Jackson beyond initial meeting); *id.* at 64:6–17 (noting that Attorney Engstrom discussed discovery with Ms. Jackson after the close of discovery).  Even if Attorney Williams's decisions regarding discovery were the result of considered analysis and his experience in the area, these decisions should have been communicated to his clients.[7]  As to the complaint, although Attorney Williams indicated at the hearing on his matter that it was his practice to send a copy of the complaint to a client when filed, no documentation was provided to support that account, and Ms. Jackson was surprised when she eventually saw the complaint in advance of the March 2021 settlement conference.  *See* ECF No. 16 at 9; ECF No. 2 at 5 (email transmitting complaint and other case items to Ms. Jackson after the close of discovery).

The lack of communication in this case prevented Complainants from making "informed decisions" about the litigation.  For instance, had Ms. Jackson been consulted about the decision not to serve discovery, or been informed of the discovery deadline, she could have decided whether she nonetheless wanted to push for discovery of the particular items sought, or agreed with Respondents' decision to wait out the discovery period without engaging in affirmative discovery of defendants.  Without the requisite communication, this agency—to participate meaningfully in the litigation involving alleged violations of Mr. Fraser's constitutional rights—was stripped from Complainants.  And though assessing the monetary injury Complainants may have sustained based on Respondents' unilateral decision not to conduct discovery is difficult because the case eventually settled, the Court agrees with the Committee that the lack of communication is in itself

---

[7] Attorney Williams himself recognized that his communication with Ms. Jackson may have been lacking because he treated her "as a colleague rather than as an upset mom."  *See* ECF No. 19 at 3.  The rules are clear that, in the normal course, clients should be communicated with as a "comprehending and responsible adult"; there is no provision justifying less communication for a client the attorney views as more sophisticated.  *See Conn. Rules of Prof'l Conduct*, Rule 1.4, Commentary (2023).

an injury or a potential injury, as it prevented Complainants from getting information to which they were entitled, and at least potentially impacted the ultimate recovery.  *See* ECF No. 16 at 10.

        D.  Rule 1.3

Finally, although not initially addressed by the Committee, the Court believes examination of whether Attorney Williams violated Rule 1.3 is appropriate.  Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."  *Conn. Rules of Prof'l Conduct*, Rule 1.3 (2023).  The commentary to Rule 1.3 elaborates that a lawyer should "take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor," "act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf."  *Id.* at Rule 1.3, Commentary.

The Court finds by clear and convincing evidence that Attorney Williams's conduct in not engaging in any discovery on behalf of Complainants violated Rule 1.3.  Attorney Williams's decision not to engage in any discovery[8] on behalf of Complainants appears to have been based on his general experience with litigation of this type, not on a particularized analysis of or tailored approach to Complainants' claims.  *See, e.g.*, Tr. of Committee Hearing, ECF No. 13 at 55:7–18; *id.* at 73:21–74:11; *id.* at 75:14–22.  When questioned by the Court about this decision, Attorney Williams relayed that he relies on other disclosure mechanisms, such as initial disclosures pursuant to Federal Rule of Civil Procedure 26, to obtain information from defendants.  This explanation rang hollow, however, when he admitted that, in this case, he received no such disclosures, and did nothing to follow up on the non-disclosure.  This conduct does not demonstrate the "zeal in advocacy" required by Rule 1.3.

---

[8] Although Attorney Engstrom primarily handled the discovery process, Attorney Williams supervised Attorney Engstrom and took responsibility at the hearing before this Court for the decision not to engage in discovery.  S*ee id.* at Rule 5.1 (noting supervisors must take reasonable efforts to ensure all lawyers in the firm comply with the Rules of Professional Conduct, and that supervisors can be held responsible for another's violation of the Rules).

Failing to propound discovery may not always rise to the level of a violation of Rule 1.3. Here, however, it is particularly problematic when coupled with Attorney Williams's lack of communication with his clients.  One can imagine a scenario in which, after consultation, Complainants approved Attorney Williams's approach to discovery, due to cost limitations, reliance on his expertise, or other considerations.  But Attorney Williams' conduct meant that client involvement could not occur here.  And, though it is difficult to say exactly how much Attorney Williams's lack of diligence ultimately injured Complainants financially, the Court finds that his failure to conduct discovery resulted in at least a potential injury to Complainants, in addition to the actual injury of "needless anxiety" and a lack of "confidence in the lawyer's trustworthiness." *See Conn. Rules of Prof'l Conduct*, Rule 1.3, Commentary (2023).

### E. Sanctions

Having established that Attorney Williams violated Rules 1.3 and 1.4, the Court must decide the appropriate discipline.  To answer this question, the Court draws guidance from the Standards for Imposing Lawyer Sanctions propounded by the American Bar Association ("ABA"). *See* American Bar Association, *Standards for Imposing Lawyer Sanctions* (1986, amended 1992) ("ABA Standards"); *see also In re Payne*, 707 F.3d 195, 207–08 (2d Cir. 2013) (citing to ABA Standards); *Spat*, 2006 WL 1050039, at *2 (citing and applying ABA Standards).  The ABA Standards advise making an initial determination as to the appropriate sanction based on the rule violation, mental state, and injury or potential injury at issue, before considering any relevant aggravating or mitigating factors that may justify a different sanction.  *See* ABA Standards, Theoretical Framework.  Aggravating factors include:  "prior disciplinary offenses . . . refusal to acknowledge wrongful nature of conduct; vulnerability of victim; [and] substantial experience in the practice of law." *Id.* at § III.B.9.2.  Mitigating factors include:  "absence of a prior disciplinary

record; absence of a dishonest or selfish motive . . . full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation . . . delay in disciplinary proceedings . . . [and] remoteness of prior offenses." *Id.* at § III.B.9.3.  The Court is further mindful that, in general, lawyer discipline should be public, except in cases of "minor misconduct, when there is little or no injury to a client . . . and when there is little likelihood of repetition by the lawyer." *Id.* at § III.A.1.2.

The Court initially finds, as to both Rule violations, that public censure (referred to as "reprimand" in the ABA Standards) is an appropriate sanction, as public censure is "generally appropriate" when a lawyer's violation of these Rules is negligent, and "causes injury or potential injury to the client." *See id.* at § III.B.4.4, 4.6.  The Court has already determined that Attorney Williams's conduct caused actual or potential injury to Complainants, but it does not find that Attorney Williams had any intention to cause this result; thus, his mental state was merely negligent.

The Court therefore turns to an analysis of the aggravating and mitigating factors present here, to see if deviation from this initial determination of a public sanction is warranted.  Attorney Williams has had four prior disciplinary offenses, two of which involved violations of Rule 1.3 and 1.4 and resulted in public censure.  *See* ECF No. 16-1; ECF No. 22.  Thus, even though these prior offenses are dated, they are aggravating in nature.  Attorney Williams's substantial experience is likewise an aggravating factor that holds weight here.  He was clear that his conduct here was part of his usual course of representation and, although the Court has not been presented with other complaints, the Court is concerned that other clients may have been treated the same way in the past, or will be treated the same way in the future.  *See Spat*, 2006 WL 1050039, at *2, *3 (considering that practices were not "endemic" to attorney's practice in choosing lesser sanction

of public censure and noting experience of seven years as an aggravating factor); *see also Payne*, 707 F.3d at 207–08 (declining to impose private censure, as requested by attorney, where conduct had repeated itself, despite that attorney had "reduced his caseload").  The Committee was of the view that Attorney Williams showed little remorse during its hearing regarding his conduct with Complainants, which could be viewed as an aggravating factor.  *See* ECF No. 16 at 11 (Attorney Williams' testimony "left the impression that he did not believe his conduct was lacking in any way despite his substantial experience").  The Court understands the Committee's conclusion, but discounts its weight slightly because Attorney Williams has now acknowledged that Ms. Jackson "deserved more hand-holding and careful explanation of the process . . . than [he] gave her," which demonstrates at least some tempered reflection about his approach to client communication.  ECF No. 19 at 3–4.

The Court has also considered mitigating factors.  Although the Court acknowledges the evidence of good reputation and character submitted by Attorney Williams, *see id.*, the Court accords it only some weight in mitigation as it is self-serving.  *See Payne*, 707 F.3d at 206 (according no weight to "unsworn, unverifiable" client review submitted by attorney).  The Court does not, however, find that in any way Attorney Williams's conduct has been "dishonest or selfish," and recognizes that he has been cooperative throughout this grievance proceeding.  Lastly, the Court recognizes that this grievance proceeding has been pending for almost two years, and that much of the conduct at issue occurred almost three years ago, which weighs in favor of mitigation as well.  *See Zelotes*, 2017 WL 354849, at *3 (opting to impose public censure, rather than reciprocal suspension, where federal proceeding had occurred eighteen months prior and conduct occurred six years prior, and noting that the "pendency of this action, alone, is a form of punishment").

Overall, the Court finds that balancing the aggravating and mitigating factors does not alter the initial determination that public censure is the appropriate sanction, especially keeping in mind that the Court should err in favor of public discipline where appropriate.  The Court does not make this decision lightly, as it acknowledges Attorney Williams' lengthy career litigating civil rights matters in state and federal courts.  But Complainants were unquestionably entitled to more diligence and more communication than Attorney Williams provided, and future clients who may seek to engage him based on his significant experience in this field deserve to the opportunity to learn of the deficiencies in his representation identified in this case.  Thus, the Court concludes that public censure is an appropriate sanction, consisting of a written reprimand stating that, in connection with the underlying action, Attorney Williams violated Rules 1.3 and 1.4 in failing to diligently represent and communicate with Complainants regarding the underlying matter.

## IV.    ATTORNEY ENGSTROM[9]

The Court first discusses which Rules, if any, Attorney Engstrom violated, before turning to the issue of what discipline, if any, is warranted.  The Court concludes that public censure of Attorney Engstrom is appropriate.

### A.  Rule 1.1

For the same reasons it found Attorney Williams did not violated Rule 1.1 concerning competent representation, the Court likewise finds that Attorney Engstrom has not violated that Rule.[10]  Again, while the Court does not indicate its approval of Respondents' strategy not to engage in any discovery, Respondents offered plausible, and considered, legal and strategic

---

[9] References to electronic court filings in this section pertain to documents filed in Case No. 22-gp-2 (SVN).

[10] Although Attorney Engstrom appears to have primarily handled discovery in this case, Attorney Williams supervised Attorney Engstrom and took responsibility for the decision not to engage in discovery at the hearing in this matter.  However, a subordinate attorney is still "bound by the Rules of Professional Conduct notwithstanding that that lawyer acted at the direction of another person;" thus, the Court addresses her conduct independently.  *See Conn. Rules of Prof'l Conduct*, Rule 5.2 (2023).

analysis underlying this decision. *See, e.g.*, ECF No. 2 at 4 (expressing Attorney Engstrom's view that "[d]epositions of police officers in this type of case are not helpful, since they are already on record with their reports and they provide self-serving responses" and it "gives them more opportunity to practice their defense at trial"). The Court finds that Attorney Engstrom possessed the appropriate level of knowledge and skill to engage in this representation and discharge her duty of competence, despite any arguable deficiencies in her legal strategy. *Cf. Spat*, 2006 WL 1050039, at *1 (finding attorney did not provide competent representation where she did not review court file before appearing).

        B. <u>Rule 1.4</u>

       The Court finds by clear and convincing evidence that Attorney Engstrom violated Rule 1.4 by not communicating with Complainants regarding the decision not to conduct discovery of the defendants in the underlying case. As referenced above, Ms. Jackson's surprise regarding the lack of discovery is evident from her numerous emails regarding the subject after the close of discovery. *See, e.g.*, ECF No. 18 at 24. In her testimony before the Committee and before this Court, and her exhibits submitted, Attorney Engstrom did not provide evidence of any communications regarding discovery that occurred before the discovery period in this case closed. *See, e.g.*, ECF No. 11 at 61:16–22 (noting that Ms. Jackson and Attorney Engstrom had a discussion about obtaining information in February of 2021); *id.* at 66:11–16 (same); ECF No. 18 at 24, 25 (emails from Ms. Jackson requesting discovery). Because Complainants were not aware of the closure of the discovery period, or the failure of Attorney Engstrom to conduct discovery, they could not make "informed decisions regarding the representation"—the too-late communications between Attorney Engstrom and Ms. Jackson did not change that. This failure to communicate with Complainants, which deprived them of their ability to make fully informed

decisions, is a violation of Rule 1.4. And again, although an assessment of injury here is necessarily somewhat speculative, the Court finds that Attorney Engstrom's conduct clearly caused at least potential injury to Complainants, as, with more discovery or more communication, they may have gained further settlement or other leverage in the litigation. *Cf. Spat*, 2006 WL 1050039, at *1, *2 (noting that degree of discipline should decrease where client's claim for benefits "lacked merit," and therefore client did not "lose rights through Respondent's failure to protect her interests").

       C. <u>Rule 1.3</u>

       The Court also finds by clear and convincing evidence that Attorney Engstrom's conduct in not conducting any discovery of defendants on behalf of Complainants violated Rule 1.3. Attorney Engstrom's lack of diligence was clearly demonstrated by the fact that she prepared discovery requests for only one defendant, *see* ECF No. 18 at 68–82, that she ultimately did not send out merely due to "human error," *see* ECF No. 11 at 63:12, and that she offered to engage in document discovery for Ms. Jackson only after *Ms. Jackson* raised idea, which was only *after* discovery had closed. *See id.* at 64:6–14; *id.* at 75:5–7 (recognizing that contemplated Freedom of Information Act ("FOIA") requests could have been sent as discovery requests); ECF No. 2 at 4 ("[d]iscovery had closed" when Ms. Jackson asked about certain documents); ECF No. 18 at 24–25 (emails from Ms. Jackson to Attorney Engstrom requesting certain documents after the close of discovery). Although the decision not to take depositions of defendants may have been intentional, Attorney Engstrom has proffered no explanation for the decision not to request documents such as communications between the defendants, body camera footage, or Internal Affairs documentation through discovery; regardless, any post-hoc explanation would be insufficient, in light of the fact that she offered to request these items from the City of Bridgeport

through a FOIA request two weeks after discovery, after her communication with Ms. Jackson.[11]

*See id.* at 25; *see also Payne*, 707 F.3d at 203 (affirming disciplinary action where attorney repeatedly missed deadlines).  Overall, Attorney Engstrom's discovery conduct fell far short of the diligence, promptness, and zeal required by Rule 1.3.  It is compounded by Attorney Engstrom's failure to communicate with Complainants regarding their case and discovery until after the close of discovery.  Although it is difficult to say exactly how much this lack of diligence may have financially injured Complainants, the Court finds that the failure to conduct discovery resulted in at least a potential injury to Complainants, in addition to the injury of "needless anxiety" and a lack of "confidence in the lawyer's trustworthiness."  *See Conn. Rules of Prof'l Conduct*, Rule 1.3, Commentary.[12]

### D.   Sanctions

As with Attorney Williams, the Court initially finds, as to both Rule violations, that public censure is an appropriate sanction, as public censure is "generally appropriate" when a lawyer's violation of these Rules is negligent, and "causes injury or potential injury to the client."  *See* ABA Standards at § III.B.4.4, 4.6.  The Court has already determined that Attorney Engstrom's conduct caused actual or potential injury to Complainants, but it does not find that Attorney Engstrom had any intention to cause this result; thus, her mental state was merely negligent.  *See id.* at 13.

---

[11] For instance, Attorney Engstrom provided a post-hoc explanation of her decision not to request body camera footage, stating that the Bridgeport Police Department did not use body cameras at the time of the incident.  ECF No. 18 at 2; *see also id.* at 84–87.  However, this post-hoc rationalization does not seem to represent her understanding at the time, as she stated in her response to Ms. Jackson's email requesting body camera footage that "we could ask for . . . body camera footage . . . through FOIA."  *See id.* at 25.  As such, this discrepancy only serves to further illustrate the lack of diligence in the overall approach to discovery.

[12] The Court acknowledges that some of the communications submitted by Attorney Engstrom, and in particular ECF No. 18 at 37–38, contain obscene and unkind language levied by Ms. Jackson against Attorney Engstrom.  While the Court can understand Ms. Jackson may have been frustrated by the situation, the Court condemns in the strongest possible terms the conduct towards Attorney Engstrom that these emails demonstrate.

The Court therefore turns to an analysis of the aggravating and mitigating factors present here, to see if a deviation from this initial determination of a sanction is warranted.  As for aggravating factors, the Court notes that Attorney Engstrom generally defended her approach in this case throughout the grievance proceeding, even when confronted with her failure to send the discovery she drafted or to communicate with Complainants regarding discovery in advance of the close of discovery.  Further, and of primary concern to the Court, Attorney Engstrom has "substantial experience in the practice of law," *see id.* at § III.B.9.2, as she has been practicing law for forty-eight years, twenty-eight of those years as a member of Attorney Williams's firm, which focuses primarily on civil rights litigation, *see* ECF No. 11 at 50:10–21.  In light of her significant experience, the Court accords less weight than the Committee to her "subordinate role" at the firm. *See* ECF No. 14 at 10; *see also Conn. Rules of Prof'l Conduct*, Rule 5.2, Commentary (noting that an attorney's level of responsibility may "be relevant in determining whether a lawyer had the knowledge required to render conduct a violation of the Rules," and that where "the duty of both lawyers is clear . . . they are equally responsible for fulfilling it").  Thus, Attorney Engstrom's experience is a significant aggravating factor, in the Court's view.  *See Spat*, 2006 WL 1050039, at *3 (seven years of experience as an attorney considered aggravating factor).

In terms of mitigation, the Court considers that Attorney Engstrom has no prior disciplinary offenses, that her conduct did not have a "dishonest or selfish motive," and that she participated cooperatively in these proceedings.  In addition, the Court considers that these proceedings have been relatively long-pending, which weighs in favor of mitigation.

Overall, the Court finds that balancing the aggravating and mitigating factors does not alter the initial determination of the appropriate sanction, given that there are significant factors on either side of the equation, and especially keeping in mind that the Court should err in favor of

public discipline where appropriate.  As with its decision to impose public discipline on Attorney Williams, the Court does not make this decision lightly.  But it cannot condone the communication failures and lack of diligence Attorney Engstrom demonstrated while bearing primary responsibility for litigating Complainants' matter, and finds that future clients should have the opportunity to be made aware of the deficiencies in her representation of Complainants.  Thus, the Court concludes that public censure is an appropriate sanction, consisting of a written reprimand stating that, in connection with the underlying action, Attorney Engstrom violated Rules 1.3 and 1.4 in failing to diligently represent and communicate with Complainants regarding the underlying matter.

## V.    <u>CONCLUSION</u>

 For the reasons discussed above, the Grievance Committee's Presentments as to Attorneys Williams and Engstrom are adopted in part.  As this decision imposes public discipline, Case Numbers 22-gp-1 (SVN) and 22-gp-2 (SVN) are unsealed.  *See* D. Conn. Local Rule 83.2(d)7.

**SO ORDERED** at Hartford, Connecticut, this 4th day of January, 2024.


 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE